**Charles Michael GOSS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 53098.**

Court of Criminal Appeals of Texas.

April 20, 1978.

Michael Ramsey, Houston, for appellant.

Carol S. Vance, Dist. Atty., Don Stricklin and Clyde F. DeWitt, III, Asst. Dist. Attys., Houston, Jim D. Vollers, State's Atty., David S. McAngus, Asst. State's Atty., Austin, for the State.

OPINION

DAVIS, Commissioner.

Appeal is taken from a conviction for criminal negligence homicide. Punishment was assessed by the jury at 365 days.

The record reflects that on January 3, 1975, appellant drove his automobile into the rear of an automobile driven by Beverly Jean Jasper. Johnny Carpenter, a passenger in appellant's automobile at the time of the collision, testified that appellant was driving approximately 120 miles per hour when the accident occurred. Jasper died within minutes after the collision from severe burns suffered in the accident. Jasper's death is the gravamen of this prosecution.

Appellant contends that the trial court erred in overruling his objection to exhibits 14 through 20, "the photographs of a horribly charred and burned body."

Dr. Ethel Erickson testified that she was acting medical examiner of Harris County at the time of trial. In addition, she related that she was custodian of the records at the medical examiner's office and that she was qualified to interpret those records and reports.

The record reflects that the doctor testified as follows regarding State's Exhibits one through twenty:

"Q. Dr. Erickson, I will show you what has been marked for identification purposes only State's Exhibit one through twenty and ask if you can identify these?

"A. Yes, I can.

"Q. And what are these, doctor?

"A. These are—this is the autopsy report of Beverly Jean Jasper and these are photographs partially taken in the Harris County morgue and partially taken at the scene of the collision. These are labeled with the same autopsy number.

  *    *    *    *    *    *

"Q. Were the entries in your records made at or near the time of the recorded events?

"A. The record was dictated during the time that the autopsy was being performed.

"Q. Alright, what is the number of the autopsy report?

"A. 75–38.

"Q. And what is the number on each of the exhibits two through twenty?

"A. 75–38.

"Q. Does case number 75–38 give you a name of the deceased?

"A. The name is given on the autopsy report, Beverly Jean Jasper.

  *    *    *    *    *    *

"Q. Do you know who actually performed the autopsy?

"A. Yes, I do.

"Q. Who was that?

"A. Dr. Sheldon Green and Dr. Roberto Bayardo.

  *    *    *    *    *    *

"Q. And who actually prepared the report?

"A. Dr. Sheldon Green.

  *    *    *    *    *    *

"Q. What does the autopsy report show was the condition of the deceased lips?

"A. The deceased upper lip was almost completely burned away and part of the lower lip was burned.

"Q. Doctor, may I see these? Doctor, I show you what has been marked for identification purposes only as *State Exhibit Number fifteen* and ask you if that picture truly depicts the physical outward appearance of the person as described in the autopsy? [Emphasis supplied.]

"A. Yes, it does.

"Q. Does the report give any information as to the condition of the lower extremities below the knees of Beverly Jean Jasper?

"A. Most of the skin and sub-cutaneous tissues had been completely burned away on the lower legs exposing the bones.

"Q. I show you what has been marked for identification purposes as *State's Exhibit number sixteen* and ask you that picture is consistent with the autopsy report? [Emphasis supplied.]

"A. Yes, it is.

"Q. Does the autopsy report indicate that the deceased had anything around her neck?

"A. Yes, it does.

"Q. And, what was that?

"A. It was a chain, a necklace type of chain with a watch pendant. The watch had stopped at 11:05.

"Q. Doctor, I show you what has been marked for identification purposes as *State's Exhibit Number nineteen* and ask you if that is consistent

with the autopsy report—with your autopsy report? [Emphasis supplied.]

"A. Yes, it is.

"Q. I will show you then doctor, what has been marked for identification purposes as *State's Exhibit Number twenty* and ask if you can specifically identify the picture·and the notation that is on the picture? [Emphasis supplied.]

"A. There is an identification piece of white paper with the number 75–38 written on it placed over the breast of the deceased.

"Q. And is this picture consistent with the autopsy report?

"A. Yes, it is."

At this juncture, the exhibits were offered into evidence and appellant objected to the admissibility of the photographs because the proper predicate had not been laid, because Dr. Erickson did not have personal knowledge that the photographs actually depicted what they purported to depict, and because Dr. Erickson had not viewed the body. The overruling of this objection by the court forms the basis of this ground of error.

The admissibility of State's Exhibit 1, the autopsy report, was not contested at trial, nor is its admission complained of on appeal. See Art. 49.25, V.A.C.C.P.; Art. 3737a, V.A.C.S. See *Prejean v. State,* Tex. Cr.App., 480 S.W.2d 652; *Clark v. State,* Tex.Cr.App., 449 S.W.2d 231.

■ The State urges that the photographs were admissible since conditions of the body shown in the photographs were consistent with conditions on deceased's body described in the autopsy report. A review of Dr. Erickson's testimony reflects that she pointed to factors in Exhibits 15, 16, 19, and 20 which were consistent with the autopsy report's description of the body of the deceased but, other than the state-

ment of Dr. Erickson that each of the exhibits was numbered "75–38,"[1] no connecting factor is shown between the autopsy report and Exhibits 14, 17, and 18. The fact that certain factors depicted in the photographs were consistent with the autopsy report, standing alone, would not render the photographs admissible. The admissibility of a photograph is conditioned on its identification by a witness as an accurate portrayal of facts relevant to the issue and on verification by such witness or person of knowledge that the photograph is a correct representation of such facts. *Haas v. State,* Tex.Cr.App., 498 S.W.2d 206; *Gonzales v. State,* Tex.Cr.App., 532 S.W.2d 343; *McCormick & Ray,* Texas Evidence, Sec. 1465 (2d ed. 1956). The evidence in this case clearly does not meet such test. Assuming that the photographs could have been proven up by the autopsy report, a review of such report does not make any reference to photographs having been taken of the body of deceased before, after, or at any point during the autopsy, nor is any mention made of photographs.

■ The State further urges that the photographs were part of the medical examiner's records and are admissible under Art. 3737e, V.A.C.S. The record is devoid of proof which would render the pictures admissible under Art. 3737e, V.A.C.S. Further, if it be urged that such photographs are admissible as part of the autopsy report under Art. 49.25, V.A.C.C.P., and Art. 3731, V.A.C.S., a review of the record fails to reveal evidence which would substantiate such conclusion.

We find that the admission of State's Exhibits 14 through 20 depicting a burned body was error and requires reversal of this case.

The judgment is reversed and the cause remanded.

Opinion approved by the Court.

1. The exhibits in the record before us appear to be very poor reproductions of the exhibits introduced at trial and do not reflect that the numbers "75–38" appear on any photograph except Exhibit 19. In light of our disposition of the ground of error, this is not a critical factor to our decision.